UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MICHAEL DUNN,<br>Plaintiff,<br>v.<br>PATRIC A. SOLIMERC, et al.,<br>Defendants. | Case No. 26-cv-07690-RMI<br><br>**ORDER PURSUANT TO 28 U.S.C. § 1915(E)(2)**<br><br>Re: Dkt. No. 1 |

Having already reviewed Plaintiff's Motion to Proceed In Forma Pauperis, the court now reviews the Complaint. Pursuant to 28 U.S.C. § 1915(e)(2), the court has determined that the Complaint in this case is due to be dismissed for the reasons set forth below.

Plaintiff alleges that in July 2024, he sent $5,200 via certified mail to the Bureau of Engraving and Printing ("BEP") in Washington, D.C., in what appears to have been one package. (Compl., Dkt. 1, at 2, 4–5.) In that package, he mailed in six $100 bills, with "serial numbers clear," and 230 $20 bills "with only a 3/8" by 3/8" out of the top but otherwise in good condition with serial number legible." (*Id.*) Plaintiff identified the number assigned to this package as 2434920. (*Id.* at 1–3.) In a call on May 23, 2025, to the Mutilated Currency Division ("MCD"), an agency official identified as "Ray" told Plaintiff that "about $2,700 had been found redeemable." (*Id.* at 2.) On that call, Plaintiff disputed this total, stating that $5,200 worth of money had clear serial numbers. (*Id.*) In a following call, an unnamed official told Plaintiff that "a handful" of his $20 bills had been stolen. (*Id.* at 2.) Plaintiff states that he has "no way of absolutely proving what was sent" and then avers that the bills would not have gone missing if MCD security procedures were stronger. (*Id.*) He then asks a series of questions about MCD procedures (e.g., "how many

had access to sealed box of bills?"). (*Id.*) Finally, Plaintiff alleges that on November 6, 2024, he sent in another "batch" of damaged $100 bills, assigned No. 2441068, which he says MCD officials found to be redeemable but have yet to pay him for their value. (*Id.)* Plaintiff states that "MCD mandate requires compensation for mutilated bills." (*Id.*) Under "Claims," Plaintiff writes the following:

> As Patric A. Solimere directs the Mutilated Currency Division with Eric Walsh Jr. a subordinate and not only has the $5,200 + $3,700 2441068 not been redeemed but I have no response to standard form 95 or letters. I need the $5,200 + $3,700 for auto repairs as I live about 40 miles from mass transit. 2 years elapsed is criminal.

(Compl. at 3.) Finally, under "Demand for Relief," Plaintiff writes (1) "redeem the mutilated cash and take responsibility for stolen $20 bills" and (2) "court should ask investigation of MCD procedures." (*Id.*)

First, the Complaint names Patric A. Solimere and Eric Walsh Jr. as the Defendants in this case, alleging that Defendant Solimere "directs the Mutilated Currency Division with Eric Walsh Jr. a subordinate." (Compl. at 1.) Plaintiff's Complaint, however, does not allege any specific acts on the part of these named Defendants outside of their positions at BEP, nor is it clear to the court that either of the individuals are still employed at BEP. As such, the court interprets this as case against the United States Government agency BEP rather than a case for individual liability.

A liberal reading of the Complaint suggests four possible claims: a claim challenging the MCD's finding that only $2,700 was redeemable of the alleged $5,200; a claim that the delay in payment is unreasonable and requesting immediate payment of the total alleged amount of both packages of mutilated currency sent to MCD; a claim for MCD to "take responsibility" related to the allegedly stolen $20 bills sent as part of the first package; and a claim requesting a court-ordered investigation into MCD's security procedures. Some of these claims may be brought through multiple different legal avenues depending on the nature of the allegations, but it is difficult to know which types of claims Plaintiff intends to bring because he does not structure his claims pursuant to any particular federal laws.

The Complaint does reference the Administrative Procedures Act ("APA") on the title page, but it does not properly state a claim under the APA nor structure any part of the request for

relief under the APA. Courts reviewing agency actions under the APA may "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action, findings, and conclusions" which are found to fall into a set of specifically delineated categories.[1] 5 U.S.C. § 706. Plaintiff must clarify which part of the APA forms the basis for his claims so the court can properly evaluate whether he has stated facts sufficient to state a claim. Moreover, if Plaintiff intends to bring a claim based on agency action "unlawfully withheld or unreasonably delayed," Plaintiff must state facts to show "that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting." *Dmitriev v. Chertoff*, No. C 06-07677 JW, 2007 WL 1319533, at *2 (N.D. Cal. May 4, 2007) (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–65 (2004)). As part of this showing, he must assert "that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton*, 542 U.S. at 64. Without further specificity as to which agency action is being challenged under the APA—the failure to pay the redeemable funds or the determination that only $2,700 of the first package was redeemable, or both—and without clarification as to the statutory grounds for such challenge(s), Plaintiff's Complaint does not give sufficient notice of the nature of the claims under Rule 8(a) nor state a claim under Rule 12(b)(6). *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) ("A complaint may be deficient because it does not provide sufficient facts to support a cause of action; on the other hand, even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In addition to the referenced APA claims, the Complaint could also bring tort claims for conversion against the BEP for the retention and theft of Plaintiff's property. The United States has waived its sovereign immunity for certain classes of tort claims through the Federal Torts

[1] These categories cover agency actions, findings, and conclusions found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2).

Claim Act ("FTCA"), including for conversion claims originating in California. *CHoPP Computer Corp. v. United States*, 5 F.3d 1344, 1347 (9th Cir. 1993). However, a tort action cannot be brought against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). *See also Redlin v. United States*, 921 F.3d 1133, 1136 (9th Cir. 2019) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."). A claim is sufficiently presented to an agency "where a claimant gives notice of the manner and general circumstances of injury and the harm suffered, and a sum certain representing damages." *Avery v. United States*, 680 F.2d 608, 611 (9th Cir. 1982). The purpose of this requirement is to ensure that agencies receive enough information to investigate and settle claims before any court action is taken. *Brady v. United States*, 211 F.3d 499, 503 (9th Cir. 2000).

Here, it is not clear that Plaintiff properly presented his claim to the BEP. While Plaintiff attached to the Complaint a one-page letter addressed to Defendants in early 2026 in which he explained some of the facts of his case, the letter does not give a sum certain sought or request any specific payment, instead concluding with the question, "what are your security measures?" and the statement, "I hope you are concerned." (Compl. Ex. Letter, Dkt. 1, at 4.) The Complaint states that Plaintiff submitted a Form 95, but it does not say when this form was submitted to the BEP or the dollar amount requested as part of the claim. Plaintiff must show that he presented a claim to the BEP for a sum certain.[2] *See, e.g.*, *Robutka v. Dep't of Just.*, No. 06CV0716 WQH (NLS), 2007 WL 1975407, at *2 (S.D. Cal. Apr. 18, 2007). Because the Complaint does not clearly meet the FTCA claim presentation requirements, the court does not have subject matter jurisdiction to hear

[2] Plaintiff may be able to argue that the letter is sufficient by clarifying his claims in the Complaint to specify whether he intends to bring a tort claim for the amount allegedly stolen by an employee and the amount sought as part of this claim. The letter does contain some amounts despite not including a specific request for payment, but at this juncture, the court cannot determine if it is sufficient because no claim has been clearly stated under the FTCA.

any tort claims under the FTCA and the Complaint must be dismissed under 28 U.S.C. § 1915(e)(2).[3]

Finally, Plaintiff does not cite any legal authority to support his request that the court order an investigation into the security procedures of MCD. If Plaintiff wishes to investigate MCD security measures himself, he may be able to ask about such issues during discovery if his claim moves forward. If Plaintiff intends to request the investigation as a form of relief, he must connect his request to an underlying cause of action supported by federal law.

Plaintiff shall, on or before September 8, 2026, file an amended complaint in accordance with Rule 8 that sets forth his claims such that the statutory and factual basis for each claim against Defendant BEP is clear.[4] If Plaintiff intends to bring a claim against any individuals at the BEP or MCD, he must state facts describing the specific conduct of those persons named as Defendants. If Plaintiff intends to bring a tort claim for the theft of his property, he must clearly state this claim as well as all necessary facts to invoke FTCA jurisdiction as described above. Failure to abide by this Order will result in the undersigned recommending that this case be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: August 17, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

---

[3] Plaintiff most likely cannot bring a tort claim for abuse of process based on the retention of the payment and the decision as to how much of the total amount was redeemable, as Plaintiff cannot show that the BEP officials were investigative or law enforcement officials as required for abuse of process claims under the FTCA. *See Scruggs v. Bureau of Engraving & Printing*, 200 F. Supp. 3d 78, 82 (D.D.C. 2016) ("The relevant BEP employees who reviewed plaintiff's mutilated currency claim are not law enforcement or investigative officers potentially subject to waiver of sovereign immunity" for the plaintiff's abuse of process claim) (citing 28 U.S.C. § 2680(h)).

[4] If Plaintiff disagrees with the court's interpretation of his Complaint as properly brought against the Bureau itself rather than the individual Defendants, he should so clarify in his amended complaint.